**DEPARTMENT OF TRANSPORTATION, et al v. COULTER, et al.**

No. 72-522.

Circuit Court, Leon County.

July 16, 1973.

F. E. Steinmeyer, III, Tallahassee, for the plaintiffs.

Anne C. Booth and Edgar C. Booth of Hall & Booth, Tallahassee, for the defendant Rainey Cawthon Distributors, Inc.

Jim L. Dye, Tallahassee, for the defendant Calvin Perdue.

Bryan W. Henry, Tallahassee, for the defendant co-trustees of the Estate of Charles Fred Pierson, Jr.

JOHN A. RUDD, Sr. Circuit Judge.

This cause came on for hearing on July 5, 1973 on the motion of the defendant, Rainey Cawthon Distributors, Inc., designated as an owner of parcel 102 in this condemnation proceeding. This hearing was to resolve issues under provisions of Rule 1.200, Florida Rules of Civil Procedure, preparatory to trial. This cause is now scheduled to begin on July 9, 1973.

Plaintiffs have obtained an order dated May 30, 1972 condemning a portion of parcel 102, located at the corner of Seventh Avenue and Thomasville Road in Tallahassee, for the purpose of widening Seventh Avenue and the aforesaid intersection. It is undisputed that an established business of more than five years standing, a service station, has been maintained and operated on the parcel in question by the defendants, Rainey Cawthon Distributors, Inc. and Calvin Perdue. The question presented involves the interpretation of Fla. Stat. §73.071 and whether the constitutional requirements of full compensation to an owner of property being condemned, as well as the concepts of due process and equal protection of the law, require consideration by the jury of evidence of loss of business profits to both Rainey Cawthon Distributors, Inc. and Calvin Perdue resulting from the partial taking of parcel 102.

The defendants in parcel 102 have submitted the following facts as being an accurate representation of the proof to be adduced at the trial —

The fee owner of parcel 102 is the Estate of Charles Fred Pierson, Jr., a defendant herein. On September 1, 1961 the fee owner entered into a written lease with Rainey Cawthon Distributors, Inc. as lessee. Under the terms of this lease, the lessee became the holder of an estate for a term of years, an estate which terminates on August 31, 1976, fifteen years from the date of execution. As of the date of taking of parcel 102, some four years and three months remained under the terms of the lease.

Under the terms of the lease between the fee owner and Rainey Cawthon Distributors, Inc. as lessee, the lessee agrees to pay $225 per month rent, to pay all taxes and special assessments on the property, to maintain fire and liability insurance, to maintain the improvements on the premises and be responsible for the operation of the premises.

The lessee, Rainey Cawthon Distributors, Inc., expressly covenants in the lease to use the premises for those purposes which are

commonly and ordinarily associated with the operation of a service station and is authorized to construct, rebuild or reconstruct at the lessee's own expense a service station and any other necessary or useful structures for carrying on a service station business. Upon termination of the lease the structures and improvements become the property of the lessor subject only to the right of the lessee to remove all pumps, air compressors, tanks, outdoor lighting equipment and advertising signs. The lessee further agrees to maintain fire insurance coverage and to rebuild such service station in the event of destruction by fire.

Under the provisions of the lease Rainey Cawthon Distributors, Inc. has the right to assign and sublet the station, however, the distributor is required to guarantee the payment of all rent and the performance of all covenants under the lease.

Following the execution of the lease between the fee holder and the distributor, the distributor built a service station and other related improvements on the property together with pumps, islands, paving, signs and lighting.

Shortly after the execution of the lease, Rainey Cawthon Distributors, Inc. entered into an oral arrangement with Calvin Perdue for the operation of the service station. Under the terms of the arrangement between Rainey Cawthon Distributors, Inc. and Calvin Perdue, Rainey Cawthon Distributors, Inc. would maintain all the improvements on the property, pay taxes, insurance and the rental due to the fee owner. In return, Calvin Perdue would undertake the day-to-day operation of the service station, purchasing all of the gasoline to be sold on the premises from Rainey Cawthon Distributors, Inc.

Profits from the retail operation of the service station are divided as follows — the distributor receives 1.5¢ per gallon on each gallon of gasoline sold on the premises, the operator receives the balance of the profit made from the retail operation of the service station. The understanding between the distributor and the operator is that so long as he sells a minimum of 20,000 gallons of gasoline per month and otherwise operates the service station in a manner agreeable to the distributor, he will be permitted to continue the day-to-day operation of the service station. Past experience indicates that gasoline sales at the service station average approximately 22,000 gallons per month. The distributor has received as his portion of the gross profit from the sale of this gasoline the sum of $330 per month. There is no minimum rental or fee paid by the operator to the distributor, the distributor's gross profit being entirely dependent upon the number of gallons of gasoline sold on the premises.

The distributor realizes a profit from the operation of the service station located on this parcel by virtue of the fact that under its agreement with the operator, the distributor supplies all the gasoline and some other related products sold on the premises and receives a gross profit of 3.5¢ per gallon from the sale of gasoline on the premises, in addition to the 1.5¢ profit from the retail sale of the same gasoline.

The 1.5¢ per gallon retail profit realized by the distributor, amounting to approximately $330 per month, is insufficient to cover the rental, taxes, maintenance and other obligations of the distributor under the lease with the fee holder. However, the profit realized to the distributor by virtue of its right to supply the gasoline sold on the premises, when added to the retail profit, results in a net profit of approximately $500 per month, an amount which is entirely dependent on the number of gallons of gasoline sold on the premises.

All parties agree that under Carter v. State Road Department, 189 So.2d 793 (Fla. 1966), the distributor, being a lessee for a term of years, is an "owner" entitled to compensation for the land taken and damage to the remainder under provisions of Chapter 73, Fla. Stat.

The parties further agree that Calvin Perdue and Rainey Cawthon Distributors, Inc. are owners of the business located on parcel 102 and, as such, are permitted to present evidence of, and share proportionately in, the retail business damages which the jury finds are a direct result of the condemnation.

The condemning authority concedes that Rainey Cawthon Distributors, Inc. is an owner of the business located on parcel 102 and, as such, is entitled to submit evidence of, and receive, a proportionate share of the retail business losses. However, the condemning authority argues that it is improper to allow any consideration of loss of business profits attributable to that portion of the distributor's business operation on parcel 102 which can be termed "wholesale" as opposed to "retail". In other words, the condemning authority contends that the jury in assessing business damages under Fla. Stat. §73.071(3)(b) may consider only the retail profits generated by the business and may not consider the profit to the distributor arising from its wholesale gallonage sales on the premises.

The court has been furnished with a thorough memorandum and after argument, both the condemning authority and the defendant, Rainey Cawthon Distributors, Inc., have agreed that the determination of the question presented hinges upon the court's interpretation of Article 10, §6 of the Florida Constitution which provides for full compensation to the owner of property sought to be condemned, the due process and equal protection provisions, Fla. Stat.

§73.071, which sets forth the items of damage allowable in condemnation, and the case of City of Tampa v. Texas Company, 107 So.2d 216 (Fla. App. 2 1958), cert. discharged 109 So.2d 169 (Fla. 1959).

After arguments of counsel, review of the authorities cited in the memorandum and thorough and careful study of the above cited case, constitutional provisions and statutes, it is ordered and adjudged —

The constitutional guarantee of "full compensation" under Article 10, §6 includes the right to business damages as provided by Fla. Stat. §73.071 as held in Walters v. State Road Department, 23 So.2d 878, 882 (Fla. App. 1 1970).

Florida Statutes §73.071(3)(b) provides for compensation to an owner for damage to, or destruction of, "an established business of more than five years standing, owned by the party whose lands are being so taken, located upon adjoining lands owned or held by such party . . .". There is no express requirement in the statute that the business be retail or wholesale, that there be only one owner of the business or that the multiple owners participate equally in all aspects of profit making connected with the business. In the absence of expressed legislative intent to the contrary, such limitations cannot be read into the statute. All parties having an ownership interest in both the land taken and in the established business meeting the requirements of the statute are entitled to submit evidence pertaining to the damage to, or destruction of, the business. A construction of a statute limiting business damages allowable to retail businesses only, or to single owner businesses, or to owner-operators, as opposed to owner suppliers, would violate due process and equal protection, and must be avoided. Such a construction is, in any event, not required by the terms of the statute itself.

The statute clearly sets out the limitations on the recovery of business damages, such as the requirement that the business be of more than five years standing and be owned by the party whose lands are being condemned. These requirements preclude recovery of business damages by fee owners, landlords, wholesale suppliers and others who do not have the combined ownership interests in both land and business required by the statute.

The defendant, Rainey Cawthon Distributors, Inc., is entitled to present evidence to the jury showing all loss of business profits which it will suffer as a result of the taking in this condemnation proceeding. Evidence permitted to be presented to the jury shall include both the distributor's share of the retail net profits which it shares with the operator, defendant Calvin Perdue, and also gross profits which it realizes from the wholesale sale of its products at this location.

The jury shall be required to return a verdict on business damages which shall include business damages to be shared by Rainey Cawthon Distributors, Inc. and Calvin Perdue. After such award is entered by the jury, it shall be incumbent upon the court to apportion the award of business damages between the defendants just as it will apportion the compensation for the land taken and severance damages.

The court has thoroughly reviewed the case of City of Tampa v. Texas Company, supra, wherein the controlling question presented was stated by the court, 107 So.2d at 219, to be —

"We approach the principal question involved in this case which has never been decided by our Supreme Court. That is whether or not, where a condemning authority takes a small part of a parcel of land and where such taking did not in itself cause any damage to the remainder of the parcel, the owner thereof should receive compensation because the public work involved, in the instant case the widening of a street and the lowering of the pavement, necessitated extensive repair on a filling station located on the street."

The damages claimed in the Texas Oil Company case did not result from the land actually taken in condemnation but rather independently, from the change in the grade of the road, as stated in the opinion (107 So.2d 218) —

"Admittedly, had not the two small corners been taken by the city, no compensation would be allowed the defendants even though the lowering of the grade of the street would cause extensive damage to them. The Florida courts have held uniformly that although an abutting land owner may suffer consequential damage for the use of public lands by public authority, such is *damnum absque injuria* and therefore not recoverable by the land owner in absence of an actual, physical taking by such public authority."

The court in the Texas Oil Company case held, in accord with settled authority, that such damages were not allowable.

The Texas Oil Company case is not controlling on the facts before us because the business damages claimed here are directly related to the actual taking of the land in question. Gratuitous statements in the opinion of the District Court of Appeal, Second District, 107 So.2d 226, that business damages cannot include damages to a wholesale business interest are not controlling here.

The court finds that under the facts as stated above, Rainey Cawthon Distributors, Inc. has continuing financial responsibilities

and obligations for the proper operation, management and maintenance of the business, which responsibilities and obligations it undertakes because of the anticipated return of profit based on the sales of gasoline on the premises. An accurate assessment of business damages requires consideration of the total return to Rainey Cawthon Distributors, Inc. from the operation of the business. To limit the jury's consideration to that portion of the distributor's return labeled "retail profit", is grossly unfair, and presents an inaccurate picture of the business as an unprofitable one.

The court further finds that the proprietary interest of Rainey Cawthon Distributors, Inc. and Calvin Perdue are so co-mingled that it would be unfair to Calvin Perdue, and a deprivation of his constitutional right to full compensation, to disallow evidence of the distributor's loss of profit but require that Calvin Perdue share the award of business damages with the distributor. The condemning authority has acknowledged that the distributor has an ownership interest in the business and that such ownership interest entitles the distributor to a share in the award of business damages. The court finds that this position is unfair to the operator, Calvin Perdue, unless the total business profit to both parties is considered by the jury.

The court interprets Fla. Stat. §73.071(3)(b) in the light of the requirements of Article 10, §6 of Florida Constitution, requiring full compensation to all owners, and holds that Rainey Cawthon Distributors, Inc., a conceded owner of the business located on parcel 102, is entitled to submit evidence of loss of business profits, including wholesale profits, which directly result from the partial taking in condemnation in this cause.